UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

NATHAN YEAGER                                                        CIVIL ACTION

VERSUS

ANDREW SAUL,
*Commissioner Of Social Security*                        NO. 20-00619-BAJ-EWD

## RULING AND ORDER

Before the Court is Plaintiff Nathan Yeager's *pro se* Complaint seeking judicial review of the Commissioner of the Social Security Administration's (the "Commissioner") final decision denying in part his application for a period of disability and disability insurance benefits under Title II of the Social Security Act. (Doc. 1). Plaintiff filed a memorandum in support of his appeal. (Doc. 16). The Commissioner opposes Plaintiff's appeal. (Doc. 20). For reasons set forth herein, Plaintiff's appeal will be granted, the Commissioner's final decision denying benefits as of April 16, 2019 will be vacated, and this matter will be remanded to the Administrative Law Judge (ALJ) for consideration of new evidence not previously submitted for review.

I.  **RELEVANT BACKGROUND**

On March 16, 2018, Plaintiff filed an application for disability insurance benefits, alleging a disability onset date of October 11, 2015.[1] (Tr. 231-237). Plaintiff's

---

[1] The certified transcript of the administrative record in this matter appears at Doc. 7, and continues through Doc. 7-1, Doc. 7-2, Doc. 7-3, and Doc. 7-4. For simplicity, references to the certified transcript herein are designated by: (Tr. [page number(s)]).

alleged disability related to a crushed pelvis and tailbone, a crushed femur, neuropathy in the right leg and foot, two fractured lumbar vertebrae, chronic pain from the hip and tailbone, and post-traumatic stress disorder, depression and anxiety, all sustained as a result of a glider accident. (Tr. 18; *see* Doc. 16 at p. 1).

On August 13, 2018, Plaintiff's claim was initially denied based on the Disability Adjudicator's determination that Plaintiff was "not disabled." (Tr. 113-129). Thereafter, Plaintiff requested a hearing before the ALJ. (Tr. 137).

Plaintiff's hearing occurred on August 14, 2019. (Tr. 74-112). On September 23, 2019, the ALJ issued a partially favorable decision. (Tr. 11-25). The ALJ determined that Plaintiff was temporarily disabled from October 11, 2015 through April 15, 2019, and met the insured status requirements of the Social Security Act through December 31, 2020, based on "severe impairments" resulting from "fractures of lower extremity and pelvis, hip, and spine disorders." (Tr. 14-15). The ALJ further determined, however, that "[m]edical improvement occurred as of April 16, 2019, the date [Plaintiff's] disability ended," and that Plaintiff regained "residual functional capacity to perform light work," provided that such work did *not* involve climbing ladders, ropes, or scaffolds, and only occasionally involved climbing ramps and stairs, or balancing, kneeling, stooping, crouching, and crawling. (Tr. 22-23).

The ALJ based his determination that Plaintiff was no longer disabled as of April 16, 2019, in substantial part, on treatment notes of Plaintiff's April 15, 2019 appointment with his attending provider, Nurse Practitioner (NP) Kimberly Drake of Louisiana Pain Specialists. (*See* Tr. 1060-63, the "April 15 Treatment Notes"). The

ALJ decision characterized NP Drake's April 15 Treatment Notes as follows:

> Treatment notes from Louisiana Pain Specialists dated April 15, 2019, revealed the claimant was seen for follow-up for lower back and hip pain. (Ex. 13F/1) He had not started physical therapy. He was doing home exercises and using the elliptical machine with mild relief. The office note reported that the claimant was doing well. He reported that he has seen a large improvement in his pain/pressure since having the bolt removed from his pelvis in September but there was still discomfort there. He reported still having lower back pain and hip pain, mainly with prolonged activity. He was otherwise stable and working out regularly to improve his overall quality of health. He complained of pain in his low back and bilateral hips. His pain level was 6/10. He reported no side effects from his medication, which included duloxetine, tizanidine, alprazolam and hydrocodone-acetaminophen.
>
> The claimant was given a physical examination during this April 15, 2019 visit. (Ex. 13F/2) The physical objective findings on the April 15, 2019 visit showed the claimant appeared well developed. He was well nourished. He appeared alert and oriented. The claimant was in no acute distress. Breath sounds were equal bilaterally. There was no wheezing. Palpation of the lumbar facet revealed bilateral pain at L4 – S1. Trigger points in the paravertebrals were absent. Straight leg raising was normal at 90 degrees. Anterior flexion of the lumbar spine was limited. The claimant experienced no pain with anterior flexion. Extension of the lumbar spine was limited. Pain reported on extension of lumbar spine. Examination of the joints- hips/ SI joint indicated bilateral pain with palpation of the bilateral sacroiliac joints. Sensory in the lower extremity was normal. Upper extremities were normal. The claimant was able to squat. His gait was normal. He was able to do heel walk. He was able to toe walk. Left and right upper extremity strength was normal, as was right and left lower extremity strength. (Ex. 13F/2) The assessment was other spondylosis in the lumbar region, with radiculopathy, facet arthropathy in the lumbar region, chronic pain syndrome, arthropathy of the sacroiliac joint, neck pain, lower back pain, lumbar radiculopathy, chronic pelvic pain, and chronic hip pain. (Ex. 13F/1-2).

(Tr. 23). Notably, the ALJ's characterization of NP Drake's April 15 Treatment Notes tracks closely to the April 15 Treatment Notes themselves. (*Compare* Tr. 23 *with* Tr. 1060-63).

In sum, the ALJ determined that Plaintiff was disabled and entitled to

3

disability benefits from October 11, 2015 through April 15, 2019, but was not disabled and not entitled to benefits after April 15, 2019. (Tr. 26).

On June 17, 2020, the Appeals Council denied Plaintiff's request for review, (Tr. 1-4), and the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. § 404.981.

On September 14, 2020, Plaintiff submitted his *pro se* Complaint to this Court, appealing the Commissioner's final decision. (Doc. 1). Liberally construed, Plaintiff argues that additional evidence *not* submitted to the ALJ undermines the Commissioner's determination that his disability and entitlement to benefits ended on April 16, 2020, thus requiring remand for reconsideration of his claim. (Doc. 1-1; Doc. 16). In support, Plaintiff has supplied four additional exhibits *not* included in the administrative record: (1) Plaintiff's transcription of an audio recording of the April 15, 2019 appointment with NP Drake that resulted in the April 15 Treatment Notes, which includes Plaintiff's annotations (Doc. 1-2, the "Transcript"); (2) the actual audio recording of Plaintiff's April 15, 2019 appointment with NP Drake (the "April 15 Recording"); (3) additional treatment notes of appointments with NP Laura Read on August 28, 2019, and NP Matthew Ladouceur on October 9, 2019 (Doc. 1-3, the "Additional Treatment Notes"); and (4) a July 13, 2020 "addendum" to NP Drake's April 15 Treatment Notes, indicating that Plaintiff "feels those notes are not accurate as to his actual physical state at the time" (Doc. 1-4 at p. 2, the "Addendum").

The Commissioner opposes Plaintiff's appeal, arguing that substantial evidence supports the Commissioner's final decision denying benefits after April 15,

2019. (Doc. 20). Significantly, however, the Commissioner's opposition brief does *not* address the four additional exhibits appended to Plaintiff's complaint, or provide any argument whatsoever why these exhibits should not be considered at this late stage.

## II.   LAW AND ANALYSIS

### A. Standard

Section 405(g) of the United States Code generally limits judicial review of the Commissioner's decision regarding Social Security benefits to two inquiries: (1) whether substantial evidence exists in the record as a whole to support the Commissioner's findings, and (2) whether the Commissioner's final decision applies the proper legal standard(s). *See Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018). The Court cannot reweigh the evidence or substitute its judgment for the Commissioner's judgment, even in the event of evidentiary conflict or uncertainty. *See id.*

When reviewing the Commissioner's decision, the Court is "constrained by the record which was available to the ALJ." *Carrier v. Sullivan*, 944 F.2d 243, 247 (5th Cir. 1991). Still, "[w]hen new evidence becomes available after the [Commissioner's] decision and there is a reasonable probability that the new evidence would change the outcome of the decision, a remand is appropriate so that this new evidence can be considered." *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). As explained by the U.S. Court of Appeals for the Fifth Circuit,

> In order to justify a remand, the evidence must first be "new," and not merely cumulative of what is already in the record. Second, the evidence must be "material"; it must be relevant, probative, and likely to have changed the outcome of the Secretary's determination. Finally, the claimant must demonstrate good cause for not having incorporated the

5

new evidence into the administrative record.

*Pierre v. Sullivan*, 884 F.2d 799, 803 (5th Cir. 1989); *see also Ripley*, 67 F.3d at 555 ("To justify a remand, 42 U.S.C. § 405(g) requires that the evidence is 'new' and 'material' as well as a showing of 'good cause' for failing to provide this evidence at the original proceedings.").

### B. Discussion

As indicated above, the question before the Court is a narrow one: specifically, whether the four additional exhibits presented by Plaintiff in connection with this appeal constitute new and material evidence warranting remand for further consideration by the ALJ. Absent any argument from the Commissioner, and for reasons set forth below, the Court concludes that Plaintiff's additional exhibits constitute new and material evidence warranting remand, considered individually *and* in the aggregate. The Court's reasoning as to each exhibit follows.

#### 1. April 15 Recording and Transcript

The Court begins with Plaintiff's audio recording of his April 15, 2019 visit with NP Drake and the Transcript of the same. As indicated above, the ALJ relied substantially on NP Drake's April 15 Treatment Notes to determine that Plaintiff was not disabled and not entitled to benefits as of April 16, 2019. Most relevant here, NP Drake's April 15 Treatment Notes summarize Plaintiff's condition as follows:

> He [Plaintiff] has been doing home exercises and elliptical machine with mild relief and is doing well. He reports that he has seen a large improvement in his pain/pressure since having the bolt removed from his pelvis in September but there is still discomfort there. He reports having lower back pain and hip pain, mainly with prolonged activity. Patient is otherwise stable and currently working out regularly to improve his overall quality of health. Nathan [Plaintiff] complains of

6

>   pain in his LBP bil hip pain. His current pain level is 6/10. Patient reports no side effects from the medications.

(Tr. 1060).

Having now reviewed the April 15 Recording and Transcript, it is clear that NP Drake's April 15 Treatment Notes omit information from Plaintiff's April 15 appointment that likely could have influenced the ALJ's determination. (*See* Tr. 23, 1060-1063). For example, in the April 15 Recording, Plaintiff states that his bolt-removal surgery resulted in some reduced "pressure" and "pain," but no discernible improvement to mobility. Plaintiff further states he could "barely walk" and that after ten minutes on his feet the pain "shoots up" and "cripples" him. Plaintiff reports that he has started to exercise more, and has noticed some strength returning to his lower back, but is still "really sore" and suffering "elevated" pain. Notably, NP Drake's throughout the April 15 appointment is curt and abrupt. Indeed, NP Drake consistently interrupts Plaintiff throughout recording, cutting him off even as he is describing his current pain and mobility.

In sum, Plaintiff reported significant concerns regarding pain and mobility to NP Drake at the April 15 appointment, yet these concerns are not captured in the April 15 Treatment Notes. Likewise, these concerns are not otherwise reflected in the administrative record. As such, they are "new," and not merely cumulative of what was already before the ALJ. *Pierre*, 884 F.2d at 803.

Likewise, these additional concerns are "material." As stated, the ALJ's determination that Plaintiff was not disabled as of April 16, 2019 is based in substantial part on Plaintiff's April 15 Treatment Notes. Plaintiff's additional

7

concerns are *not* included in NP Drake's April 15 Treatment Notes and go directly to the issue of whether Plaintiff remains under disability, thereby undermining the most relevant and probative evidence relied on by the ALJ in his determination that Plaintiff was no longer entitled to benefits. *See Pierre*, 884 F.2d at 803.

Finally, Plaintiff represents that he provided the April 15 Recording and the Transcript to his attorney prior to his hearing before the ALJ, and that this evidence would (and should) have been presented to the ALJ but for his attorney's inexplicable failure to submit it. (Doc. 1-1 at p. 1). On this record, the Court will not prejudice Plaintiff due to counsel's failure. *Cf. Fishburn v. Sullivan*, 802 F. Supp. 1018, 1026 (S.D.N.Y. 1992) (counsel's failure to submit evidence for the ALJ's review did not excuse the ALJ's failure to independently seek out and consider the evidence). In the absence of any argument from the Commissioner, the Court finds that Plaintiff has established "good cause for not having incorporated the new evidence into the administrative record." *Pierre*, 884 F.2d at 803.

### 2. Addendum

The July 13, 2020 Addendum reflects Plaintiff's complaints that his pain and mobility limitations were not accurately characterized in the April 15 Treatment Notes, stating:

> This is an addendum to the notes of 4/15/2019, 2/12,19 and 11/15/18. He [Plaintiff] presents to clinic to express that he feels those notes are not accurate as to his actual physical state at the time. While he was exercising at home and using an elliptical machine sometimes, he was not able to use it for more than a few minutes at a time without having to take a break due to increased pain it caused. He reports the, since the day of the accident, has not been without significant pain, and that any prolonged activity, sitting, or standing makes it considerably worse. He reports that the improvement he experienced after the surgery to

remove the bolt was related only to the pressure sensation that the bolt was causing, and that he never had any significant improvement in his actual pain level that is responsible for his decreased function.

(R. Doc. 1-4 at 2).

For essentially the same reasons set forth above regarding the April 15 Recording and Transcript, this evidence is "new" (because it is not otherwise reflected in the administrative record) and "material" (because it undermines the April 15 Treatment Notes and, in turn, the ALJ's determination that Plaintiff was not disabled as of April 16, 2019). Additionally, "good cause" excuses Plaintiff's failure to include this evidence in the original administrative proceedings, insofar as this evidence did not exist until after the Commissioner's final decision.

### 3. Additional Treatment Notes

The Additional Treatment Notes corroborate Plaintiff's account that he continued to suffer a disability after his April 15, 2019 appointment with NP Drake. For example, the treatment notes of Plaintiff's August 28, 2019 appointment with NP Read state (among other things) that Plaintiff "is in bed 22 out of 24 hours a day," and that Plaintiff suffers "chronic pain issues, constant pain of 7/10 and worse with movement." (Doc. 1-3 at p. 1). The treatment notes of Plaintiff's October 9, 2019 appointment with NP Ladouceur state (among other things):

> He [Plaintiff] is in a special motorized medical chair during the interview. He states he is still able to ambulate fine but he gets excruciating pain if he sits down for long periods of time so he uses this medical chair which allows him to recline for his comfort. At last visit, he was started on Lyrica 50 mg TID. However, the patient states his presdption [sic] at home says Lyrtca 50 mg once a day so he has only been taking it once per day. He states it is not helping his pain at all and he is still experiencing a lot [sic] of pain, mainly in his lower back which radiates down his right leg mainly. MRI of lumbar spine from June did

9

show herniated discs at L4-5 and L5-S1.

(Doc. 1-3 at p. 1). As above, this evidence is "new" because it is not otherwise reflected in the administrative record and "material" because it undermines the accuracy of the April 15 Treatment Notes and, in turn, the ALJ's determination that Plaintiff was not disabled as of April 16, 2019.

Finally, Plaintiff represents that he also provided these additional treatment notes to his attorney yet, again, his attorney inexplicably failed to submit them for review. (Doc. 1-1 at p. 1). As before, the Court will not prejudice Plaintiff due to counsel's mistakes. *Cf. Fishburn*, 802 F. Supp. at 1026. Absent any argument from the Commissioner, the Court finds that "good cause" excuses Plaintiff's failure to include this evidence in the original administrative proceedings.

### III. CONCLUSION

Accordingly,

**IT IS ORDERED** that the Commissioner's final decision be and is hereby **VACATED**, and that the above captioned matter be and is hereby **REMANDED** for consideration of additional evidence as set forth herein.

Judgment shall be entered separately.

Baton Rouge, Louisiana, this 29th day of September, 2022

_____
**JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**

10